UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA                  )
                                          )
                                          )
    v.                                    )
                                          )  Criminal No. 14-10017-DJC
                                          )
JOHN GILLIES,                             )
                                          )
        Defendant.                        )
_____)

## MEMORANDUM AND ORDER

CASPER, J.                                                          November 20, 2018

### I.    Introduction

Petitioner John Gillies ("Gillies" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), alleging ineffective assistance of counsel. D. 137. The government opposes the Petition. D. 140. For the reasons discussed below, the Court DENIES the Petition.

### II.   Standard of Review

A prisoner may seek post-conviction relief under § 2255 if his sentence "(1) was imposed in violation of the Constitution (2) was imposed by a court that lacked jurisdiction (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). It is the Petitioner's burden to make out a claim for such relief. Id.

### III.  Factual and Procedural Background

With the assistance of a confidential informant ("CI"), federal agents arranged for a controlled delivery of a large load of marijuana from Mexico to Arizona. Id. ¶ 8-9. Once the

1

marijuana arrived in Arizona, the undercover agents took possession and transported the contents to Massachusetts. Id. ¶ 9. The CI received instructions from a source in Mexico to call a particular telephone number and the CI tendered this number to the undercover agent. Id. The undercover agent subsequently called the number and arranged to meet with a then-unidentified male in Revere, Massachusetts. Id. ¶ 10. On April 11, 2013, three Mexican men, together with Gillies, arrived in two vehicles at a parking lot in Revere. Id. At this meeting, Gillies informed the undercover agent that the money Gillies was required to pay for the undercover agent's transportation services was not ready, but that it would be ready later that evening. Id. Thereafter, the undercover agents maintained surveillance of Gillies who drove to Everett, Massachusetts and made several telephone calls at a pay phone. Id. ¶ 11. Gillies was subsequently observed engaging in a brief conversation with another male at a parking lot in Saugus, Massachusetts. Id. The next day, April 12, 2013, Gillies met again with the undercover agent and handed the agent approximately $79,000.00 in cash for transportation costs. Id. ¶ 12. At this meeting, the undercover agent provided Gillies with a "sample" of the marijuana for Gillies' inspection. Id. ¶ 12.

Luis Lastra-Barrios, another individual from Mexico, was engaged to do the transportation of the marijuana to Gillies. Id. ¶ 13. Soon after gaining possession of the marijuana, the agents had Lastra-Barrios stopped by the Massachusetts State Police in Everett, Massachusetts. Id. The seized marijuana weighed approximately 1,022.68 kilograms (2,254.60 pounds). Id. Lastra-Barrios was charged in state court and received a sentence of two and half years imprisonment for trafficking over fifty pounds of marijuana. Id. at n.3.

Initially, Gillies was also arrested and charged in state court on November 20, 2013. He was detained there until he was charged by complaint in this matter. D. 4. On January 23, 2014,

Gillies was charged in a three-count indictment charging him with conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana ("Count I"), attempt to possess with intent to distribute 1,000 kilograms or more of marijuana ("Count II") and possession of marijuana with intent to distribute ("Count III"). D. 15. On May 1, 2015, Gillies moved to suppress evidence seized as a result of various warrants obtained and executed during the course of the agents' investigation. D. 77. After hearing, D. 90, 92, 93, 95, the Court denied the motion. D. 97; D. 130 at 5-11 (stating reasons for ruling on the record).

On June 18, 2015, Gillies pled guilty to as much of Counts I and II that charged conspiracy and attempt to possess with intent to distribute 50 kilograms or more of marijuana, respectively, and the entirety of Count III. D. 99; PSR ¶ 2.

In connection with his sentencing, the Probation Department calculated his base offense level based upon the total amount seized in April 2013 as well as marijuana later seized from Gillies' vehicle, residence and storage lockers at the time of his arrest in November 2013: 1,000 to 3,000 kilograms, PSR ¶ 28, for an advisory Guideline Sentencing Range ("GSR") (with acceptance of responsibility) of 100-125 months. Id. ¶ 114. Gillies argued at sentencing that only 100 to 400 kilograms of marijuana should be attributable to him, accounting for the marijuana seized from him in November 2013, but only a portion of the shipment seized in April 2013 (namely, approximately 180 kilograms of that shipment which would correspond with $79,000, the sum of money that Gillies gave to the undercover agents), D. 118 at 11-12; D. 119 at 71, for a GSR (with acceptance of responsibility) of 57-71 months. After hearing from counsel about this dispute on the first day of the sentencing on September 16, 2015, D. 118, the Court agreed to hold an evidentiary hearing, as Gillies was seeking, as to his awareness of the total quantity of marijuana that was to be involved in the April 2013 transport. Id. at 27.

At the October 7, 2015, second day of sentencing, the Court held the evidentiary hearing regarding this issue. D. 119. The undercover agent in the case who had participated on April 11-12, 2013 meeting with Gillies and the others regarding the transportation of the load of marijuana (approximately 2375 pounds) testified. D. 119 at 4, 15, 29. During his conversation, which were in Spanish with Paco and English with Gillies, Gillies did make reference to when he was going to get his "400," id. at 27-28, 31, which the undercover agent understood to be a reference to 400 pounds, not kilograms. Id. at 32. At the end of hearing, it was clear that the facts were largely undisputed since the government did not dispute that the quantity that Gillies was going to take was a smaller portion of the larger load (namely, 400 pounds), but it took the position that given the facts and circumstances of the recorded exchanges with Gillies, the entirety of the load was reasonably foreseeable to him and should be attributed to him for the purposes of calculating the GSR. D. 119 at 69, 75. The government recommended a sentence of 100 months. D. 119 at 71.

On October 14, 2015, the third and last day of sentencing, the Court in announcing sentence, adopted Gillies' position and rejected the government's position as to quantity of marijuana attributable to him for sentencing purposes. D. 120 at 7-8. Accordingly, the Court ruled that the amount attributable to him was 100 to 400 kilograms and, with three levels off for acceptance of responsibility, was a total offense level of 21. Id. at 8. With Gillies' Criminal History Category of IV, the advisory GSR was 57-71 months. Considering all of the factors under 18 U.S.C. 3553(a), including but not limited to Gillies' "history of drug trafficking," the Court sentenced him to 70 months imprisonment, 3 years of supervised release, no fine, a mandatory special assessment and forfeiture. D. 120 at 9; D. 113.

Gillies filed a timely notice of appeal on October 27, 2015. D. 115. On appeal, Gillies' counsel filed an Anders brief indicating that she was "unaware of any legal issues of merit that can

4

be pursued in an appeal." United States v. John Gillies, No. 15-2296, March 25, 2016 entry. By summary disposition, the First Circuit concluded that Gillies had "knowingly, intelligently, and voluntarily entered an unconditional guilty plea on June 18, 2015, thereby waiving all appellate rights other than jurisdictional errors and the length of his sentence," that there were "no non-frivolous matters for appeal" and summarily affirmed the sentence. Id., July 20, 2016 entry. Gillies has now filed the Petition. D. 137.

## IV. Grounds for Relief

Gillies contends that judgment was imposed in violation of the Constitution because he received ineffective assistance of counsel. Specifically, he alleges that his appellate counsel was ineffective for failing to raise the lack of role adjustment under United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2 on his direct appeal; trial counsel was ineffective for failing to get certain exculpatory and impeachment materials from the government; trial counsel was ineffective for sharing an alleged offer of Rule 11(C)(1)(c) plea agreement for a 57-month sentence from the government with him; and counsel (not clear whether this allegation is made as to trial counsel, appellate counsel or both) was ineffective for failing to object to the disparity of his sentence with Lastra-Barrios, who was charged and sentenced in state court and the government's "egregious governmental misconduct" in conducting the undercover operation which led to Gillies' arrest. D. 137-1 at 1-2. The Court will address each of these grounds in turn below.

## V. Discussion

### A. <u>Ineffective Assistance of Counsel</u>

To demonstrate ineffective assistance of counsel, a petitioner must show that: "(1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

5

would have been different.'" United States v. Constant, 814 F.3d 570, 578 (1st Cir. 2016) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

Reasonableness is viewed "as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Judicial scrutiny of a counsel's representation and performance must be "highly deferential" and the Court should make "every effort . . . to eliminate the distorting effects of hindsight." Bell v. Cone, 535 U.S. 685, 698 (2002) (internal quotation marks and citation omitted). Moreover, even deficient representation does not violate the Sixth Amendment if there was no actual prejudice. See United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993).

To demonstrate prejudice, Petitioner must show "that there is a reasonable probability" that, but for the attorney's deficient performance, there would have been a different outcome. Strickland, 466 U.S. at 694. A "reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Johnston v. Mitchell, 871 F.3d 52, 64 (1st Cir. 2017), cert. denied, 138 S. Ct. 1310 (2018) (quoting González-Soberal v. United States, 224 F.3d 273, 278 (1st Cir. 2001)).

### B. Addressing Grounds Raised by Gillies

#### 1. There was No Clear Error in Not Adopting a Role Adjustment

Gillies argues that the Court erred in not adopting a role adjustment. D. 137-1 at 1. As a preliminary matter, Gillies failed to preserve this claim of error below. Under such circumstances, the standard of review on appeal is for plain error. United States v. Pinkham, 896 F.3d 133, 136 (1st Cir. 2018). This standard requires Gillies to demonstrate on appeal "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). This Gillies cannot do. Even setting aside this heightened benchmark, a role adjustment is afforded to a minor participant "who is less culpable

6

than most other participants in the criminal activity, but whose role could not be described as minimal." USSG § 3B1.2 cmt. 5. Accordingly, Gillies carries the burden of demonstrating that "he is both less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of comparable crimes." United States v. Ortiz–Santiago, 211 F.3d 146, 149 (1st Cir. 2000). The record before the Court demonstrates no deficient performance by appellate counsel in failing to raise minor role adjustment because Gillies played a critical role in gaining possession of the April 2013 load of marijuana. Moreover, a role adjustment was not warranted here where the entire quantity of the marijuana load was not attributed to him for the purposes of the GSR the Court adopted as the Court calculated the BOL only on the amount (400 pounds) that Gillies was to take. Given these circumstances, the Court is hard pressed to find that he would have been able to satisfy the clear error standard of a role adjustment on appellate review and, accordingly, not raising such issue on appeal does not rise to deficient performance by his appellate counsel.

> 2. *Gillies Has Failed to Show How Any Evidence Allegedly Not Produced by the Government Prejudiced His Case*

Gillies next argues that his trial counsel was ineffective because she failed to object to the government's failure to provide exculpatory evidence and impeachment information concerning government witnesses. D. 137-1 at 5-6. Specifically, Gillies contends that the government failed to provide him with reports indicating the government received permission to conduct a controlled delivery and that agents paid money to a Mexican cartel mule to facilitate same. Id. at 6. Gillies further contends that the government failed to provide him with documents and tapes indicating the government unlawfully installed audio and video recording equipment in his vehicle. Id. at 6-7. Even assuming *arguendo* that such additional evidence exists or discovery of same was warranted, Gillies has failed to explain Court how such discovery would have prejudiced or

7

affected the outcome of the case concerning his unsuccessful motion to suppress or his decision to enter an unconditional guilty plea. That is particularly true as to his argument that such additional discovery would have demonstrated that he was responsible for a lesser quantity of a marijuana and a role adjustment was warranted. D. 137-1 at 8. As explained above, however, the Court actually adopted Gillies' contention as to the quantity of marijuana appropriately attributed to him under the USSG and a role adjustment was not warranted in light of this calculation. For all of these reasons, Gillies' second claim fails.

       3.     *No Deficient Performance by Counsel as to the Existence of a (C) Plea*

Gillies' allegation that his trial counsel failed to communicate a Rule 11(C)(1)(c) plea to him is belied by the record. See D. 140 at 8-9. First, there is no indication on the record that such offer ever existed. First, the government, which would necessarily have to enter into such an agreement, denies ever offering Gillies such an agreement. Id. Second, during the Court's colloquy with Gillies, the Court asked his counsel if she had communicated all plea offers to her client and she answered affirmatively. D. 130 at 14. In addition to indicating at the same time that he was satisfied with the advice and representation of his counsel in this case, id., Gillies also indicated that he had no plea agreement or other agreement with the government other than the agreement that he was only pleading guilty to as much of the indictment that charged him with conspiracy and attempt to possess with intent to distribute 50 kilograms or more of marijuana. Id. Gillies has not provided a sufficient basis to contend plausibly that his counsel was deficient in regard to this issue and this claim also fails.

       4.     *There Was No Deficient Performance by Trial or Appellate Counsel In Not Arguing About Unwarranted Sentencing Disparities or Allegedly Egregious Police Misconduct*

Gillies next argues that his counsel was ineffective for failing to argue an unwarranted sentence disparity in comparison to the two and a half year sentence imposed on Lasta-Barrios in state court. D. 137-1 at 12. At sentencing, one of the factors the Court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see United States v. Reverol–Rivera, 778 F.3d 363, 366 (1st Cir. 2015). This provision is "primarily aimed at national disparities, rather than those between co-defendants." United States v. Rivera–Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010) (internal quotation marks and citation omitted). Moreover, a federal defendant is "not entitled to a lighter sentence merely because his co-defendants received lighter sentences." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (quoting Rivera-Gonzalez, 626 F.3d at 648). Even, however, if counsel had attempted to argue that Lasta-Barrios was a similarly situated defendant, such argument would not have been meritorious or well-founded. First, Lasta-Barrios was a mere courier engaged to deliver the large quantity of marijuana orchestrated by Paco and the transportation paid for by Gillies. PSR ¶ 12-13. Second, in addition to the greater role in the offense that Gillies played, Gillies' criminal history spans over forty years and includes three prior felony convictions and a long history of drug trafficking. See id. ¶¶ 40-65. That is, Gillies can show no prejudice from an alleged failure by his counsel to raise this argument since it was destined to fail.

Gillies further argues that his counsel failed to object to the "egregious governmental misconduct" concerning the controlled delivery of the marijuana and that such conduct was a manufactured criminal offense. D. 137-1 at 2. This contention also fails since an undercover investigation is a "recognized and permissible means of investigation" and that "[l]aw enforcement tactics such as this can hardly be said to violate 'fundamental fairness' or 'shocking to the universal

sense of justice.'" United States v. Russell, 411 U.S. 423, 432 (1973) (internal citation omitted). Accordingly, this claim fails as well.

Since none of the asserted claims rise to ineffective assistance of counsel,[1] the Court DENIES the Petition.

## VI. Certificate of Appealability

A petitioner may receive a certificate of appealability only if he has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion. Id. Accordingly, the Court is not inclined to issue a certificate of appealability but will give Gillies until December 11, 2018 to file a memorandum, not to exceed five pages, if he desires to address the issue of whether a certificate of appealability is warranted as to the Petition.

## VII. Conclusion

For the foregoing reasons, the Court DENIES Petitioner's habeas petition under 28 U.S.C. § 2255, D. 137.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[1] To the extent that Gillies seeks an evidentiary hearing as to any of these claims, D. 143 at 19, such relief is not warranted here and is also denied.